# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ZACHERY TREY ALLEN**                                                                                      **PLAINTIFF**
**ADC #158242**

v.                              No: 4:23-cv-00198-KGB-PSH

**STEVEN D. BROWN,** *et al.*                                                                      **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Zachery Trey Allen, an Arkansas Division of Correction inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on March 15, 2023 (Doc. No. 2). Allen was subsequently granted leave to proceed *in forma pauperis* and invited to file an amended complaint to clarify and narrow his claims. Doc. Nos. 4 & 6. Allen

filed an amended complaint on May 2, 2023, alleging that he was held in unconstitutional conditions of confinement for 72 hours beginning on January 1, 2023 (Doc. No. 7). The Court recommended dismissal of Allen's claims without prejudice for failure to state a viable claim. *See* Doc. No. 9. Allen then moved to amend his complaint and attached a proposed amended complaint (Doc. Nos 11 & 11-1). Chief Judge Baker adopted that portion of the Court's recommendation concerning dismissal of the conditions-of-confinement claims, but did not dismiss the case. *See* Doc. No. 13. Allen was instead afforded leave to file his proposed amended complaint raising additional claims related to his 72 hours on behavior control in January 2023. *Id.* The undersigned screened Allen's Second Amended Complaint (Doc. No. 15), and ordered service on defendants Supervising Lieutenant Steven D. Brown, Supervising Sergeant Jody Robertson, Warden Todd Ball, and Major Antonio D. Johnson, Jr. (the "Defendants"). *See* Doc. No. 16.

Before the Court is a motion for partial summary judgment, a brief in support, and a statement of facts filed by the Defendants claiming that Allen did not exhaust available administrative remedies with respect to all of his claims against them before he filed this lawsuit (Doc. Nos. 42-44). The Court notified Allen of his opportunity to file a response and separate statement of disputed facts, but he failed to do so. *See* Doc. No. 45. Because Allen failed to controvert the facts set forth in the ADC Defendants' statement of undisputed material facts, Doc. No. 44, those

facts are deemed admitted. *See* Local Rule 56.1(c). For the reasons described below, the undersigned recommends that the Defendants' motion for partial summary judgment be granted.

## II. Allen's Complaint Allegations & Dismissal of Conditions Claim

Some initial clean-up is necessary in this case. In both his original and amended complaints, Allen alleged that he was held in unconstitutional conditions of confinement for 72 hours beginning on January 1, 2023, after Sergeant David Hutchinson and Corporal Jerome Eason placed him there with no clothing or a blanket on the orders of Lieutenant Steven Brown. Doc. Nos. 2 & 7. Allen also claimed that temperatures outside were below 40 and the fans were turned on for two days, and that Robertson denied him a blanket or boxers on January 2, 2023. *Id.* These claims were previously recommended for dismissal because the conditions alleged did not amount to a constitutional violation and because Allen did not describe any physical injury he suffered as a result of the alleged conditions. *See* Doc. No. 9.

In his Second Amended Complaint, Allen restated these allegations,[1] but did not add any additional facts or describe any injury relating to these conditions. Doc. No. 15 at 4. The Court therefore did not construe Allen's Second Amended

---

[1] Allen did not name Hutchinson or Eason as defendants in the Second Amended Complaint. Doc. No. 15 at 1-2.

Complaint as pursuing a conditions-of-confinement claim based on these allegations. Allen made a number of new allegations in his Second Amended Complaint, which survived the Court's screening process. Specifically, he alleged that Robertson sexually assaulted and harassed him while he was in isolation, and that he wrote an emergency grievance regarding the harassment on January 11, 2023. Doc. No. 15 at 4-5. Allen further alleged that defendants Ball, Johnson, and Brown "purposely failed and refused to take necessary corrective action and were deliberately indifferent to take necessary corrective action and were deliberately indifferent allowing Defendant Sgt. J. Roberson to sexually harass and sexually assault me as described in my Amended Complaint." *Id.* at 6. The Court construed Allen's Second Amended Complaint as solely raising these new claims.

To the extent Allen raised conditions-of-confinement claims in his Second Amended Complaint, these claims should be dismissed for the reasons previously explained. *See* Doc. Nos. 9 & 13. As Chief Judge Baker stated, "Mr. Allen did not allege . . . . a specific, physical injury, which is a prerequisite for compensation in this type of case." Doc. No. 13 at 2. Accordingly, the Court recommends Allen's conditions-of-confinement claims be DISMISSED without prejudice for failure to state a claim upon which relief may be granted. However, if this recommendation is not adopted, these claims should proceed against Brown for the reasons described herein. *See* discussion of Grievance TU-23-00030 in IV.C.2, *infra* (finding that the

grievance should serve to exhaust any remaining conditions-of-confinement claims against Brown).

### III.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### IV.  Analysis

Defendants argue that they are entitled to summary judgment with respect to certain claims because Allen failed to exhaust all available administrative remedies before he filed this lawsuit. In support of their motion, the Defendants submitted the declaration of Terri Grigsby Brown, the ADC's inmate grievance supervisor (Doc. No. 42-1); applicable ADC grievance policy (Doc. No. 42-2); a copy of Allen's grievance history (Doc. No. 42-3); a copy of Grievance TU-23-00027 (Doc. No. 42-4); a copy of Grievance TU-23-00030 (Doc. No. 42-5); and a copy of Grievance TU-23-00149 (Doc. No. 42-6).

*A.  Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C.

§1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 628 (8th Cir. 2003). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 42-2 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved

or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 6. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit either the pink or yellow copy of his Unit Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9. If a formal grievance is medical in nature, it is assigned a code and forwarded to the appropriate medical personnel for response. *Id.* at 10.

The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10-11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit

Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

### B.  *Relevant Grievances*

In her declaration, Inmate Grievance Supervisor Terri Grigsby-Brown stated that she reviewed Allen's grievance appeal file and found three grievances that either address his claims in this case or name any of the Defendants: TU-23-00027, TU-23-00030, and TU-23-00149. *See* Doc. No. 42-1 at ¶¶ 33-35. The Court describes the first two because they describe pending claims in this case. TU-23-00149 describes a cup restriction/underfeeding complaint and briefly mentions Johnson in

connection to Allen's January 1, 2023 placement on behavior control;[2] however, Johnson is not named as a defendant in connection to that claim in Allen's Second Amended Complaint. Accordingly, there is no need to discuss this grievance further.

1. <u>TU-23-00027</u>.

Allen submitted TU-23-00027 on January 11, 2023. Doc. No. 42-4 at 3. He alleged that Robertson sexually harassed him on January 4, January 9, and January 10, 2023, by making sexually suggestive comments, and that while shackling him for the shower, Robertson pressed up against Allen's bottom. *Id.* Allen proceeded to Step Two on January 15, 2023, stating "no actions were taken to insure my safty from this guard and alligations he worked 1-13-23 in WISO."[3] *Id.* On January 17, 2023, the grievance coordinator signed an acknowledgement of the grievance, stating that it would be addressed by the Warden/Center Supervisor or designee by February 14, 2023. *Id.* at 4. On January 27, 2023, Warden Ball responded, informing Allen that his complaint had been forwarded to the PREA Compliance Manager, and that he would be notified once the investigation was complete. *Id.* at

---

[2] Allen submitted TU-23-00149 on February 27, 2023. Doc. No. 42-6 at 4. He complained that Johnson denied him a drinking cup on February 21, 2023, that he was underfed as a result. *Id.* He also complained that Johnson allowed him to sit in his cell naked for 72 hours from January 1, 2023, to January 4, 2023. *Id.* The underfeeding allegation was addressed in the response issued on March 24, 2023, and both the underfeeding allegation and the allegation about Allen sitting naked in his cell in January were addressed in the appeal response, which was dated April 24, 2023. *Id.* at 9.

[3] Grievances are transcribed verbatim without any corrections for misspellings or mistakes.

5. Allen's appeal, dated January 30, 2023, was received on February 7, 2023. *Id.* at 5-7. He was informed that he would receive a response from the chief deputy/deputy/assistant director by March 22, 2023. *Id.* at 7. The appeal response was issued March 15, 2023, informing Allen that his allegations were determined to be unfounded after completion of the internal affairs investigation. *Id.* at 8.

    2.    <u>TU-23-00030</u>.

Allen submitted TU-23-00030 on January 9, 2023. Doc. No. 42-5 at 3. He stated,

> On January 1, 2023, I was placed in restrictive housing cell 28 and placed on behavior control by Lt. S. Brown at 10:08 pm. I had started a fire. On "behavior control" I was put in a one man cell with no property, no clothing, no mattress, no blanket to cover myself with. Temperatures at night were below 40 degrees and the air vents fans stayed on none stop for 2 days. More than a dozen guards looked at me naked, I was humiliated. The light stayed lit non-stop and they never dim them or turn them off. Behavior control is a violation of my right to not be punished cruel and unusually by prison staff. . . . Warden Ball, Deputy Warden Randall, Major Johnson and Lt. S. Brown are responsible for my torture. Change policy regarding behavior control 72 hour policy for 72 hours.

*Id.* Warden Ball responded, describing the behavior control policy and finding the grievance without merit. *Id.* at 5. Allen appealed, stating that he should have had a blanket and underwear per policy, and that Brown, Hutchinson, Eason, and Robertson (identified as "Sgt. Jodie Robinson") were not properly trained in behavior control policy and had violated his rights. *Id.* at 5-6. The appeal response was issued on February 23, 2023, finding Allen's grievance without merit. *Id.* at 8.

## C.   *Exhaustion of Allen's Claims*

1. <u>Sexual Assault/Harassment Claims Against Robertson & Corrective Inaction Claims Against Ball, Brown, and Johnson</u>.

The only grievance filed by Allen regarding Robertson's alleged sexual assault and harassment or the failure to take corrective action is TU-23-00027, in which Allen alleged that Robertson sexually assaulted and harassed him on January 4, January 9, and January 10, 2023.  Doc. No. 42-4.  He names no other individuals in this grievance or his appeal but generally complains that no corrective action was taken when he proceeded to Step Two.  *Id.* at 3.  The Defendants argue that this grievance does not serve to exhaust any of Allen's claims because he did not complete all steps of the grievance procedure before he initiated this lawsuit – rather, the grievance was completed on the same day the lawsuit was received by the Court and filed.  Doc. No. 43 at 11-12.

While this timing presents a difficult question at first glance, the Court agrees with Defendants that Allen was required to receive the appeal response before filing suit.  Allen's original complaint was dated March 7, 2023, and post-marked March 13, 2023.  Doc. No. 2 at 5 & 14.  The Court received it for filing on March 15, 2023.  The appeal response to TU-23-00027 was issued the same day.   Allen could not have received the appeal response before he initiated this lawsuit, as was required to exhaust available administrative remedies.  *See e.g., Kimery v. Payne*, No. 4:20-CV-00473-SWW-JJV, 2021 WL 2251621, at *2 (E.D. Ark. May 6, 2021), *report and*

*recommendation adopted,* No. 4:20CV00473-SWW-JJV, 2021 WL 2251448 (E.D. Ark. June 2, 2021), *aff'd,* No. 21-2775, 2021 WL 6808451 (8th Cir. Dec. 1, 2021) ("For Plaintiff to have fully exhausted his administrative remedies in connection with these grievances, he would have had to receive a final decision before he filed suit.").

However, because Allen filed several amended complaints in this case *after* he received the appeal response to TU-23-00027, the Court must also address recent case law concerning which date controls when an amended complaint has been filed: the date of the original complaint or the date of an operative amended complaint. United States Magistrate Judge Joe J. Volpe recently explained the controlling law:

> The PLRA says no action "shall be brought" until available administrative remedies are exhausted. 42 U.S.C. § 1997e(a). In *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003), the Eighth Circuit said: "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies <u>before</u> filing suit in federal court. ... If exhaustion was not completed at the time of filing, dismissal is mandatory." (Emphasis in the original.) Based on the *Johnson* language, this District has held that a prisoner must fully exhaust administrative remedies before the complaint is filed and that an amended complaint does not extend that deadline. *See, e.g., Ashford v. King*, Case No. 4:21-cv-00522-KGB-JJV, 2022 WL 3904719, at *1 (E.D. Ark. Aug. 30, 2022); *Dunahue v. Payne*, Case No. 4:21-cv-00959-JM-JJV, 2022 WL 2961878, at *3 (E.D. Ark. Jul. 5, 2022); *Mallory v. Bland*, Case No. 4:20-cv-105-JM-BD, 2020 WL 3239993, at *1 (E.D. Ark. Jun. 3, 2020); *Tyler v. Kelley*, Case No. 5:17-cv-00239-JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018); *Nichols v. Peppers-Davis*, Case No. 5:14-cv-00157-KGB-BD, 2014 WL 7399207, at *2 (E.D. Ark. Dec. 17, 2014). But the *Johnson* holding is not directly on point because there the question was whether exhaustion had to be completed before the judge ruled on the issue; it did not

involve the question of whether the deadline is extended by the filing of an amended complaint.

In *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025), which was decided last month, the Eighth Circuit held that because the PLRA does not say otherwise, the "typical rules governing amendments and relation back in civil actions" apply. Although dealing with a different section of Fed. R. Civ. P. 15 than applies to this case, the Court then held that Rule 15 determines whether the date of the complaint or amended complaint controls for exhaustion purposes. *Id.*

In this case, the relevant sections of Fed. R. Civ. P. 15 say:

> (c)(1) An amendment to a pleading relates back to the <u>date</u> of the original pleading when:
>
> * * *
>
> (B) the amendment asserts a claim or defense <u>that arose out of the conduct, transaction, or occurrence set out</u> -- or attempted to be set out -- in the original pleading;
>
> * * *
>
> (d) On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened <u>after the date</u> of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

(emphasis added). Thus, if the new complaint continues with claims raised in the original complaint, then it relates back under Rule 15(c)(1)(B) to the date of the filing of the original complaint. In such instances, exhaustion must be completed by the filing date of the original complaint. In contrast, if the new complaint raises events that occurred after the original complaint was filed, then it is technically a

> "supplemental" complaint under Fed. R. Civ. P. 15(d), and it does not relate back. Under those circumstances, exhaustion must be completed by the filing date of the supplemental complaint, or "amended" complaint as it is often called in *pro se* cases. *See Holt v. Profiri*, 4:22-cv-01132-KGB-JJV (E.D. Ark. Mar. 10, 2025) (Doc. 133) (following the Third, Sixth, and Ninth Circuits and finding that because the amended complaint raised events that occurred after the original complaint was filed, it was technically a supplemental complaint under Fed. R. Civ. P. 15(d), and thus, the prisoner had until the date of the supplemental complaint to complete exhaustion).

*Koontz v. Payne*, No. 2:24-CV-00054-DPM-JJV, 2025 WL 1539835, at *4–5 (E.D. Ark. Apr. 25, 2025), *report and recommendation adopted*, No. 2:24-CV-54-DPM-JJV, 2025 WL 1539823 (E.D. Ark. May 29, 2025) (footnotes omitted). *See also, Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) ("[T]he PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim.").

Allen's pending sexual harassment and failure-to-take-corrective-action claims were first raised in his Second Amended Complaint dated May 25, 2023. *See* Doc. Nos. 11-1 at 7 & 15 at 7. This is the operative complaint in this case. Allen's claims that Robertson sexually assaulted and harassed him in January 2023, and that Ball, Brown, and Johnson failed to take corrective action, arose before Allen initiated this lawsuit in March of 2023. The allegations also stem from the same incident as that described in his original complaint – the conditions Allen experienced while on behavior control beginning on January 1, 2023. *See* Doc. Nos.

2, 7 & 15.  Accordingly, Allen's Second Amended Complaint relates back to the date of the original complaint,[4] and Allen was required to exhaust all steps of the grievance procedure before he filed this lawsuit.  Because he signed and mailed his original complaint before receiving the appeal response to TU-23-00027, this grievance does not serve to exhaust Allen's sexual assault/harassment claims against Robertson or his corrective inaction claims against Ball, Brown, and Johnson.

    2.    <u>Conditions-of-Confinement Claims Against Brown and Robertson</u>.[5]

The undersigned recommends that Allen's conditions-of-confinement claims be dismissed for failure to state a claim, as previously explained.  *See* discussion at II, *supra*; Doc. No. 9.  However, if that recommendation is not adopted, Allen's conditions-of-confinement claims against Brown may proceed.  Brown does not move for summary judgment as to this claim against Brown.  *See* Doc. No. 42 at ¶ 3

---

[4] As Judge Volpe noted:

> There is an important distinction here. For <u>pleading or content</u> purpose, the amended complaint supersedes and replaces the original complaint, meaning only the claims and defendants mentioned in the amended complaint may be considered. [*Allen*], 132 F.4th at 1068, *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).  In contrast, in *Allen*, the Court held Rule 15 controls whether the exhaustion must be completed by the <u>date</u> of the complaint or amended/supplemental complaint.

*Koontz v. Payne* at *6 (emphasis in original).

[5] Brown and Robertson are the only two defendants Allen names in connection with this claim in his Second Amended Complaint.  *See* Doc. No. 15 at 4.

(describing the claims in Allen's Second Amended Complaint) & ¶¶ 4-6 (describing those that should be dismissed for failure to exhaust administrative remedies). Robertson does move for summary judgment on this claim. *Id.* at ¶ 6. Robertson points out that he is not named in TU-23-0030, in which Allen grieved the conditions he experienced on behavior control beginning January 1, 2023. Doc. No. 43 at 10; Doc. No. 42-5 at 3. The Court notes that Allen named Robertson in his appeal. *Id.* at 5. The ADC grievance policy instructs inmates not to list names on appeal not identified in the initial grievance.[6] Because there is no indication Allen's complaint about Robertson was investigated and addressed, his claim against Robertson based on the conditions of confinement during his time on behavior control is not exhausted and should be dismissed. *See e.g.*, *Winston v. Bland*, No. 5:16-CV-00252-KGB-PSH, 2018 WL 4441526, at *4 (E.D. Ark. Feb. 27, 2018), *report and recommendation adopted*, No. 5:16-CV00252-KGB-PSH, 2018 WL 4440672 (E.D. Ark. Sept. 17, 2018) ("Although Winston tried to incorporate Dr. Stukey into the grievance by way of appeal, the deputy director did not evaluate any conduct of Dr. Stukey, per policy, which prohibits inmates from raising additional issues and names

---

[6] *See* Doc. No. 42-2 at 9 (providing that when proceeding to Step Two, "[a]ny new issues added to the form will not be considered."); & 12 (directing inmates to "not list additional issues, requests, or names which were not part of the original grievance" in their appeal). The appeal form also reminds prisoners to: "Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which are not part of your original grievance as they will not be addressed." Doc. 42-2 at 5.

which were not part of the original grievance."); *Guinther v. Barker*, No. 5:19-CV-00110-BRW-PSH, 2020 WL 4983283, at *5 (E.D. Ark. Aug. 3, 2020), *report and recommendation adopted,* No. 5:19-CV-00110-BRW-PSH, 2020 WL 5005417 (E.D. Ark. Aug. 24, 2020) (holding that Guinther's complaint about being fired, raised the first time on appeal, was not addressed in the appeal response, and therefore not exhausted).

## IV. Conclusion

For the reasons stated herein, the undersigned recommends that:

(1) Allen's conditions-of-confinement claims be DISMISSED without prejudice for failure to state a claim upon which relief may be granted;

(2) Alternatively, Defendants' motion for partial summary judgment (Doc. No. 42) should be GRANTED as to Robertson, and Allen's conditions-of-confinement claims against Robertson be dismissed without prejudice for failure to exhaust available administrative remedies; and

(2) the remainder of Defendants' motion for partial summary judgment (Doc. No. 42) be GRANTED and Allen's sexual assault/harassment claims and failure-to-take corrective action claims against them be dismissed without prejudice for failure to exhaust available administrative remedies.

DATED this 29th day of July, 2025.

                                                    UNITED STATES MAGISTRATE JUDGE